Matter of Leroy v Brookdale Hosp. Med. Ctr. (2023 NY Slip Op 06428)

Matter of Leroy v Brookdale Hosp. Med. Ctr.

2023 NY Slip Op 06428

Decided on December 14, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 14, 2023

CV-23-0410
[*1]In the Matter of the Claim of Sylvia Leroy, Respondent,
v
Brookdale Hospital Medical Center et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:November 13, 2023

Before:Lynch, J.P., Clark, Ceresia, Fisher and Mackey, JJ.

Fischer Brothers, Port Washington (Amy Levitt of counsel), for appellants.
Pasternack Tilker Ziegler Walsh Stanton & Romano LLP, Brooklyn (Michael K. Gruber of counsel), for Sylvia Leroy, respondent.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for Workers' Compensation Board, respondent.

Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed August 22, 2022, which ruled, among other things, that claimant sustained an accidental injury arising out of and in the course of her employment.
In May 2020, claimant, a registered nurse, filed a claim for workers' compensation benefits alleging that, on March 8, 2020, she contracted COVID-19 — with related conditions of "coughing, fever, body[ ]aches, cardiac arrest . . . [and an] emergency c-section"[FN1] — during the course, and as the result, of her employment by working with "known positive coworkers." The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) controverted the claim, contending that no accident occurred in the course of employment and that there was no causal relationship between the alleged injuries and claimant's employment. Following hearings and the submission of medical evidence and deposition testimony,[FN2] a Workers' Compensation Law Judge (hereinafter WCLJ), among other things, established the claim for COVID-19 with related conditions of pneumonia, hypoxemic respiratory failure, cardiac arrest and brain injury. Upon administrative review, the Workers' Compensation Board affirmed, initially ruling that, pursuant to 12 NYCRR 300.38 (f) (4), the carrier had waived all defenses to the claim, and could not submit any evidence, due to its failure to timely file a PH-16.2 form (Pre-Hearing Conference Statement) and that any rebuttal of the presumption contained in Workers' Compensation Law § 21 was limited to testimony elicited during the cross-examination of claimant and/or her doctors and other witnesses. As to the merits of the claim, the Board found that claimant's husband provided credible testimony regarding the prevalence of COVID-19 in claimant's work environment to demonstrate that an accident arose in the course of claimant's employment and that the carrier failed to rebut the Workers' Compensation Law § 21 presumption of compensability. The carrier appeals.
We affirm. "Initially, the contraction of COVID-19 in the workplace reasonably qualifies as an unusual hazard, not the natural and unavoidable result of employment and, thus, is compensable under the Workers' Compensation Law" (Matter of Pierre v ABF Frgt., 211 AD3d 1284, 1285 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; accord Matter of Holder v Office for People with Dev. Disabilities,215 AD3d 1201, 1201 [3d Dept 2023]; see also Workers' Compensation Law § 2 [7]). "Nevertheless, whether a compensable accident has occurred is a question of fact to be resolved by the Board, and its determination in this regard will not be disturbed where supported by substantial evidence" (Matter of Holder v Office for People with Dev. Disabilities,215 AD3d at 1201-1202 [citations omitted]). "Although Workers' Compensation Law § 21 (1) provides a presumption that an accident that occurs in the course of employment also arises out of that employment[*2], the statutory presumption cannot be used to establish that an accident occurred in the first instance, and it does not wholly relieve a claimant of the burden of demonstrating that the accident occurred in the course of, and arose out of, his or her employment" (Matter of Ferrari v Darcon Constr. Inc., 170 AD3d 1392, 1393 [3d Dept 2019] [citations omitted]; see Matter of Aldea v Damari Installations Corp., 172 AD3d 1852, 1853 [3d Dept 2019]). Further, a claimant need not "pinpoint the exact date on which the incident occurred" (Matter of Pierre v ABF Frgt., 211 AD3d at 1285 [internal quotation marks and citations omitted]). Notably, "[a]ccording to guidance issued by the Board and its related decisions involving claims stemming from the contraction of COVID-19, a claimant may meet his or her burden to show that an injury arose in the course of employment by demonstrating either a specific exposure to COVID-19 or prevalence of COVID-19 in the work environment so as to present an elevated risk of exposure constituting an extraordinary event; for example, workers with significant contact with the public in communities with high rates of infection or workers in a workplace experiencing high rates of infection" (Matter of Holder v Office for People with Dev. Disabilities, 215 AD3d at 1202 [emphasis added]; see New York State Workers' Compensation Board, COVID-19 & Workers' Compensation Q & A [June 2020], available at https://www.wcb.ny.gov/covid-19/information-workers.jsp#faqs); see e.g. Employer: Southern Glazer's Wine, 2022 WL 4397485, *6, 2022 NY Wrk Comp LEXIS G2335750, — [WCB No. G233 5750, Sept. 20, 2022]; Employer: Long Island DDSO, 2022 WL 594590, *5, 2022 NY Wrk Comp LEXIS 933, *12-13 [WCB No. G233 5526, Feb. 16, 2022]; Employer: Manhattan Psychiatric Ctr., 2021 WL 5748736, *5, 2021 NY Wrk Comp LEXIS 5600, *11 [WCB No. G281 3814, Nov. 29, 2021]; Employer: DOCCS Edgecombe Corr. Facility, 2020 WL 7231882, *3-4, 2020 NY Wrk Comp LEXIS 15519, *9-10 [WCB No. G271 8395, Dec. 1, 2020]).
Jeffrey Leroy, claimant's husband, testified that, from February 2020 through March 8, 2020 when claimant last worked, claimant was assigned to a maternity unit and would "float" to other units in the hospital where she worked. On March 11, 2020, after eating out at a restaurant, claimant became ill with headaches, chills and vomiting which resulted in her hospitalization on March 12, 2020. Although Leroy experienced similar symptoms on March 11, 2020, his symptoms resolved that night. Claimant was released from the hospital on March 15, 2020 — but was not tested for COVID-19 — and diagnosed with a urinary tract infection involving a kidney infection and acute gastroenteritis. Despite being prescribed antibiotics, claimant remained symptomatic, and her condition worsened after her discharge from the hospital, as she experienced difficulty breathing, body aches and nausea. Given her deteriorating condition, claimant was re-admitted to the hospital on March 26, 2020 at [*3]which time she tested positive for COVID-19 and was diagnosed with COVID-19 pneumonia. At that time, claimant provided Leroy with the names of two nurses and one doctor who worked on her floor and had contracted COVID-19, all of whom claimant had worked with regularly and were assigned to her unit. Claimant also mentioned that there were other staff members and/or patients on her floor who had symptoms consistent with COVID-19. Leroy further testified that, between March 15, 2020 and March 26, 2020, he experienced a runny nose and symptoms akin to a minor cold but that neither he nor any of their family members were diagnosed with COVID-19 prior to March 26, 2020. Leroy stated that he was not employed in March 2020, that he did all of the grocery shopping and that he provided claimant with transportation to work. In addition, in March 2020, claimant did not interact with friends or "do anything or really go anywhere" due to her pregnancy.
The Board agreed with the testimony of Michael Marino, claimant's physiatrist and brain injury physician, who stated that claimant's symptoms on March 12, 2020 could have arisen from a medical condition other than COVID-19, and the Board therefore rejected claimant's argument that she had an active COVID-19 infection on March 12, 2020. The Board, however, credited Leroy's testimony that claimant's condition never improved after her March 15, 2020 discharge from the hospital, and the Board found that claimant's worsening symptoms from that time forward were entirely consistent with the onset of COVID-19 and that such onset was within the 2-to-14-day incubation period from the days prior to March 8, 2020, her last workday. Leroy's testimony also reflects that claimant experienced an elevated risk of exposure to COVID-19 at work due to her consistent interactions with infected individuals and colleagues and that, as a result, COVID-19 was prevalent in her workplace at that time. The record further demonstrates, as the Board found, that the carrier failed to elicit any rebuttal evidence during the cross-examination of Leroy. Given the foregoing, and according appropriate deference to the Board's determination to credit Leroy's testimony (see Matter of Leon v Monadnock Constr. Inc., 208 AD3d 1415, 1416 [3d Dept 2022]), substantial evidence supports the Board's determination to apply the Workers' Compensation Law § 21 presumption to find that claimant's injuries were caused by her work-related accident and employment, and we therefore find no reason to disturb the Board's determination (see Matter of Docking v Lapp Insulators LLC, 179 AD3d 1275, 1277 [3d Dept 2020]; Matter of Buccinna v Pembroke Cent. Sch. Dist., 165 AD3d 1369, 1370-1371 [3d Dept 2018]; see also Workers' Compensation Law § 2 [7]; Matter of Pierre v ABF Frgt., 211 AD3d at 1286-1287; compare Matter of Holder v Office for People with Dev. Disabilities, 215 AD3d at 1202-1203). To the extent that the carrier's remaining contentions are properly before us, [*4]we have considered them and find them to be without merit.
Lynch, J.P., Ceresia, Fisher and Mackey, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: At the time that claimant is alleged to have contracted COVID-19, she was six months pregnant.

Footnote 2: As a result of claimant's April 12, 2020 cardiac arrest and an anoxic brain injury, which required that she be resuscitated and left claimant "in a vegetative state or in a minimally conscious state," she was unable to communicate or testify at the hearings. She currently receives occupational therapy, speech therapy, physical therapy and is on a medication regimen.